**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                      **CRIMINAL ACTION**

**VERSUS**                                        **NO.: 23-63**

**JAMES MAGEE**                                   **SECTION: "G"**

## ORDER AND REASONS

Before the Court is Defendant James Magee's ("Magee") Motion to Suppress Evidence.[1] Magee moves the Court to suppress the drugs, firearms, and intercepted wire or electronic communications obtained by law enforcement because he contends that the search warrants for his residence and vehicle were invalid and the wiretap warrants were insufficient.[2] The government opposes the motion.[3] The Court held a hearing and oral argument on the motion on June 15, 2026 at 10:00 AM. Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

### A.    *Procedural Background*

On April 14, 2023, a federal grand jury in the Eastern District of Louisiana indicted Dentrell Johnson ("Johnson"), charging him with violations of the Federal Controlled Substances

---

[1] Rec. Doc. 249.

[2] Rec. Doc. 249-1 at 1.

[3] Rec. Doc. 259.

Act and the Federal Gun Control Act.[4] On June 22, 2023, a federal grand jury in the Eastern

District of Louisiana indicted Johnson, Magee, Charles White ("White"), and Deon Short ("Short")

in a Superseding Indictment, charging them with violations of the Federal Controlled Substances

Act and the Federal Gun Control Act.[5] Magee is charged in Count One of the Superseding

Indictment with a conspiracy to distribute and possess with the intent to distribute controlled

substances.[6] He is charged in Count Eight with distribution of a quantity of cocaine hydrochloride.[7]

He is charged in Counts Nine and Twelve with possession with intent to distribute controlled

substances.[8] He is charged in Counts Ten and Thirteen with possession of a firearm in furtherance

of a drug trafficking crime.[9] Magee is charged in Counts Eleven and Fourteen with being a felon

in possession of a firearm.[10]

This matter is currently set for trial on October 5, 2026.[11] On May 20, 2026, Magee filed

the instant Motion to Suppress Evidence.[12] On June 8, 2026, the government filed an opposition

---

[4] Rec. Doc. 17.

[5] Rec. Doc. 32.

[6] *Id.* at 1–3. Specifically, Magee is charged with a conspiracy to distribute and possess with the intent to distribute 500 grams or more of cocaine hydrochloride, a quantity of cocaine base, and a quantity of methamphetamine.

[7] *Id.* at 5.

[8] *Id.* at 6–7. Specifically, in Count Nine Magee is charged with possession with intent to distribute quantities of cocaine hydrochloride and cocaine base. *Id.* at 6. In Count Twelve Magee is charged with possession with intent to distribute quantities of cocaine hydrochloride. *Id.* at 7.

[9] *Id.* at 6–7.

[10] *Id.*

[11] Rec. Doc. 252.

[12] Rec. Doc. 249.

to the motion. [13] The Court held a hearing and oral argument on the motion on June 15, 2026 at 10:00 AM.

**B.    *Factual Background***

In September 2022, the Jefferson Parish Sheriff's Office ("JPSO") and Drug Enforcement Administration ("DEA") initiated a joint investigation into the drug trafficking activities of Charles White and his associates, including White's identified narcotics supplier, Johnson. [14] Between September 15, 2022 and November 3, 2022, agents made three controlled purchases of cocaine base and cocaine hydrochloride from Johnson, White, and Short. [15] On February 22, 2023, agents obtained Title III wiretaps for Johnson's telephones ("Target Telephone #1" and "Target Telephone #2"). [16] While monitoring Johnson's phones, agents intercepted numerous conversations relative to Johnson's drug trafficking activity. [17] Through the interceptions, agents learned that Magee was Johnson's source of supply and that Magee could supply as much as a half kilogram of cocaine. [18]

After identifying Magee as Johnson's source of supply, agents began conducting physical and electronic surveillance to confirm Magee's location and activities. [19] Through the surveillance

---

[13] Rec. Doc. 259.

[14] Rec. Doc. 259-1 at 29.

[15] *Id.* at 29–30.

[16] *Id.* at 30.

[17] *Id.* at 32–48.

[18] *Id.* at 43.

[19] *Id.* at 48, 51–52.

and further investigation, agents identified Magee's residence as 2417 N. Sibley Street, Metairie, Louisiana, and identified his vehicle as a 2018 silver Audi Q7.[20]

On April 20, 2023, agents obtained a Title III wiretap for Magee's phone ("Target Telephone #3").[21] On May 17, 2023, agents obtained an additional 30-day extension of the wiretap on Target Telephone #3 and obtained authorization for a wiretap on a second phone for Magee ("Target Telephone #4").[22] After obtaining the wiretaps, on May 23, 2023, agents conducted another controlled purchase of 4.5 ounces of cocaine from White to occur at the Oakwood Mall in Terrytown, Louisiana.[23] After arranging the purchase, agents intercepted a call to Magee from White in which White requested from Magee the drugs that White intended to sell to the confidential source.[24] The following day, agents conducting surveillance observed Magee as he exited his residence and drove in the Audi to the Oakwood Mall where he met with White prior to White conducting the sale.[25] After White conducted the transaction, White returned to Magee and provided him with United States Currency consistent with the funds provided to the confidential source.[26]

---

[20] *Id.* at 48; Rec. Doc. 259-2 at 68.

[21] Rec. Doc. 259-1 at 67–77.

[22] Rec. Doc. 259-2 at 95–106.

[23] Rec. Doc. 1 at 30–32.

[24] *Id.* at 30–31.

[25] *Id.* at 31.

[26] *Id.*

4

As agents continued to monitor Magee's calls, they intercepted several more calls in which Magee agreed to sell narcotics to customers.[27] After intercepting those calls, agents conducted surveillance at Magee's residence and observed Magee leave his residence in his Audi and drive to meet the customers and conduct the transactions.[28]

Based on the evidence obtained from the controlled purchases, intercepted phone calls, and physical surveillance of Magee, on May 31, 2023, agents applied for and obtained search warrants for Magee's vehicle and residence.[29] On June 1, 2023, agents approached Magee at his vehicle and executed the search.[30] Inside a removable panel on the driver's side of the vehicle agents observed a Glock 23, Gen 5, .40 caliber firearm, bearing serial number BVXW860.[31] In the same area on the passenger side of the vehicle, agents discovered seven bags of cocaine hydrochloride, crack cocaine, and methamphetamine.[32] In searching Magee's residence, agents located and seized approximately 21 grams of crack cocaine.[33]

After seizing the narcotics and firearm from Magee's vehicle, agents continued to monitor calls and text messages.[34] Within 48 hours of the execution of the search warrants, intercepted

---

[27] Rec. Doc. 259-3 at 28–33; Rec. Doc. 259-4 at 28–33.

[28] Rec. Doc. 259-3 at 28–33; Rec. Doc. 259-4 at 28–33.

[29] Rec. Doc. 259-3; Rec. Doc. 259-4.

[30] Rec. Doc. 1 at 33–34.

[31] *Id.* at 34.

[32] *Id.*

[33] *Id.* at 33.

[34] *Id.* at 34–39.

calls indicated that Magee was again trafficking cocaine and other drugs.[35] On June 13, 2023, a United States Magistrate Judge signed a criminal complaint and arrest warrant for Magee.[36]

## II. Parties' Arguments

### A.    Magee's Arguments in Support of Motion

Magee asserts that the search and wiretap warrants failed to meet the constitutional and statutory requirements imposed by federal law.[37] Magee contends the wiretap warrants did not satisfy Title III's requirement of necessity.[38] Additionally, Magee argues there was not probable cause to issue a search warrant for his residence and vehicle because the law enforcement officers failed to establish a sufficient nexus to the alleged criminal activity.[39] As a result, Magee asserts all evidence obtained directly or indirectly from these warrants, including drugs, firearms, intercepted communications, and factual admissions by co-defendants, must be suppressed as fruit of the poisonous tree.[40]

With respect to the wiretap warrants, Magee asserts that the government failed to establish necessity by showing that conventional investigative techniques had been exhausted or that continued use of those techniques would likely fail.[41] To the contrary, Magee asserts that

---

[35] *Id.*; Rec. Doc. 2.

[36] Rec. Doc. 1 at 33.

[37] Rec. Doc. 249-1 at 4.

[38] *Id.* Magee also mentions the requirements of probable cause and minimization. However, the motion does not make any specific argument regarding those requirements.

[39] *Id.*

[40] *Id.*

[41] *Id.* at 10.

investigators had already successfully employed several traditional investigative methods such as controlled purchases and physical surveillance.[42] According to Magee, the application relied largely on generalized assertions, which he argues were insufficient to satisfy Title III's necessity requirement.[43]

With respect to the search warrant for his residence, Magee argues that the affidavit failed to establish a sufficient nexus between the alleged criminal conspiracy and the location to be searched.[44] Although the affidavit described four controlled purchases and intercepted communications involving Magee and his co-defendants, Magee contends those facts do not demonstrate that narcotics or evidence of drug trafficking would likely be found at his home or in his vehicle.[45] Magee points out that none of the controlled purchases occurred at his residence, and he asserts the intercepted communications did not identify the residence as a location where narcotics were stored, manufactured, packaged, or distributed.[46] While Magee concedes the affidavit may suggest that he participated in the alleged conspiracy in some capacity, Magee asserts the affidavit failed to connect the alleged criminal conduct to the residence itself.[47]

Similarly, with respect to the search warrant for the vehicle, Magee contends that the affidavit failed to establish that narcotics were stored inside the vehicle or that the vehicle was

---

[42] *Id.*

[43] *Id.* at 11.

[44] *Id.* at 7.

[45] *Id.*

[46] *Id.* at 7–8.

[47] *Id.* at 8.

being used for drug trafficking.[48] Although the affidavit states that agents observed Magee "appear" to retrieve an object from the vehicle, Magee argues that officers never observed narcotics inside of the vehicle.[49] Magee also points out that no controlled purchase occurred from the vehicle itself.[50]

## B.    The Government's Arguments in Opposition to the Motion

The government opposes the motion to suppress because it asserts that the evidence was obtained in accordance with the constitution and federal law.[51] With respect to the wiretap warrant, the government contends that it satisfied the necessity requirement by stating in detail: (1) the investigative procedures the government attempted that failed and (2) the procedures that reasonably appeared unlikely to succeed or too dangerous.[52] The government points out that the affiant identified the techniques that he and his colleagues attempted and used to further their investigation, including controlled purchases, analyses of phone records and recordings of drug meetings.[53] The affiant also detailed why those methods only had limited usefulness and why other methods were not believed to be useful at all if tried.[54]

The other methods addressed in the affidavit were trash runs, use of confidential sources,

---

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] Rec. Doc. 259.

[52] *Id.* at 4.

[53] *Id.* at 5.

[54] *Id.*

and surveillance.[55] The government points out that the affidavit established that trash runs were not feasible because the residence was in a high crime area and that "lookouts" monitored the area.[56] Although law enforcement was able to use a confidential source for some controlled purchases, the affidavit stated that the source was not able to meet with anyone beyond Magee or Johnson to assist law enforcement in identifying high-level suppliers.[57] Therefore, the government contends that the necessity of the wiretaps was clearly established.[58]

Next, the government contends that the warrants for both Magee's residence and vehicle provide detailed facts to establish a direct nexus between Magee's residence and vehicle to establish a fair probability that evidence of drug trafficking would be found in both.[59] The government points out that on several occasions Magee was observed leaving his residence in his vehicle to conduct drug transactions almost immediately after negotiating said transactions via telephone.[60] Given these observations, combined with the affiant's training and experience, the government contends that the Court could reasonably conclude that there were likely drugs and other contraband at Magee's residence and in his vehicle.[61]

---

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.* at 6.

[59] *Id.* at 7.

[60] *Id.* at 8.

[61] *Id.* at 8–9.

### III. Legal Standard

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[62]

"The purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search."[63] A search warrant "is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police."[64] "The information necessary to show probable cause must be contained within a written affidavit given under oath," and "[t]he affidavits must supply the magistrate with sufficient information to determine that probable cause exists."[65]

### IV. Analysis

Magee moves the Court to suppress the drugs, firearms, and intercepted wire or electronic communications obtained by law enforcement because he contends that the search warrants for his residence and vehicle were invalid and the wiretap warrants were insufficient.[66] Considering that evidence obtained from the wiretaps was cited in the search warrants, the Court begins by

---

[62] U.S. Const. amend. IV.

[63] *Steagald v. United States*, 451 U.S. 204, 212 (1981).

[64] *Id.* at 213.

[65] *United States v. Brown*, 941 F.2d 1300, 1302–03 (5th Cir. 1991).

[66] Rec. Doc. 249-1 at 1.

addressing the validity of the wiretap warrants.

## A.    *Wiretap Warrants*

Magee contends the wiretap warrants did not satisfy Title III's requirement of necessity.[67] The government argues that it satisfied the necessity requirement by stating in detail: (1) the investigative procedures the government attempted that failed and (2) the procedures that reasonably appeared unlikely to succeed or too dangerous.[68]

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 *et seq.*, imposes strict requirements for the authorization and execution of wiretaps. "In this Act Congress . . . set out to provide law enforcement officials with some of the tools thought necessary to combat crime without unnecessarily infringing upon the right of individual privacy."[69] At issue in the instant motion, is whether the government showed necessity.

Before a wiretap may be authorized, the government must show, and a court must find, that "other investigative procedures have been tried and failed" or that "they reasonably appear to be unlikely to succeed if tried or to be too dangerous."[70] As the Fifth Circuit has observed,

> the purpose of § 2518(1)(c) is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted. Rather, the section is designed to inform the issuing judge of the difficulties involved in the use of conventional techniques and to ensure that wiretapping is not resorted to in a situation in which traditional investigative techniques will suffice to expose crime.[71]

---

[67] *Id.* at 4. Magee also mentions the requirements of probable cause and minimization. However, the motion does not make any specific argument regarding those requirements.

[68] Rec. Doc. 259 at 4.

[69] *Scott v. United States*, 436 U.S. 128, 130 (1978).

[70] 18 U.S.C. §§ 2518(1)(c), (3)(c).

[71] *United States v. Webster*, 734 F.2d 1048, 1055 (5th Cir. 1984) (citing *United States v. Kahn*, 415 U.S. 143,

The necessity provision of "§§ 2518(1)(c) and (3)(c) must be read in a common sense fashion."[72]

"[C]ourts are reluctant to impose their hindsight upon law enforcement agencies, and the proponents of the application need not establish that every other imaginable mode of investigation would be unsuccessful."[73] Indeed, "courts will not invalidate a wiretap order simply because defense lawyers are able to suggest post factum some investigative technique that might have been used and was not."[74] "It is enough if the affidavit explains the prospective or retrospective failure of several investigative techniques that reasonably suggest themselves."[75]

David Biondolillo, a Task Force Officer of the DEA submitted the affidavits in support of the wiretaps for Target Telephone #3 and Target Telephone #4. Both affidavits include nearly identical necessity sections.[76] The affiant identified the techniques law enforcement attempted and used to further the investigation, including: use of confidential source, recorded telephone calls, recorded drug meetings with the confidential source, controlled purchases of cocaine, analysis of telephone records, the use of pen registers, seeking information from sources of information, and physical surveillance.[77] The section also explains why those traditional investigative techniques

---

153 (1974); *United States v. Clements*, 588 F.2d 1030, 1036 (5th Cir.), *cert. denied*, 440 U.S. 982 (1979)).

[72] *United States v. Robertson*, 504 F.2d 289, 293 (5th Cir. 1974), *cert. denied*, 421 U.S. 913 (1975).

[73] *United States v. Guerra-Marez*, 928 F.2d 665, 670 (5th Cir. 1991) (internal citations and quotation marks omitted).

[74] *United States v. Hyde*, 574 F.2d 856, 867 (5th Cir. 1978).

[75] *Id.*

[76] Rec. Doc. 259-1 at 49–62; Rec. Doc. 259-2 at 74–88.

[77] Rec. Doc. 259-1 at 50; Rec. Doc. 259-2 at 75.

had not proven adequate to comprehend the full breadth of the overall criminal conspiracy.[78] The affiant explains in detail why a confidential source or undercover agent would not be in a position to fully investigate the inner workings, membership, or activities of the drug trafficking organization.[79] The affiant noted that though law enforcement's use of the confidential source resulted in the controlled purchase of some narcotics, the source was not able to meet with anyone beyond Magee or Johnson to assist law enforcement in identifying high-level suppliers in the organization.[80]

The affiant addressed the possibility of using trash runs, attesting that trash runs were not feasible because the residence was in a high crime area and that individuals monitored the area, making it difficult for law enforcement to enter the areas without being observed by members of the organization.[81] The affiant also detailed law enforcement's surveillance efforts, both physical and electronic, which included GPS pings.[82] The affidavits detailed how on more than one occasion Magee identified surveillance vehicles in the area that were watching him.[83] Also, while GPS pings assisted in identifying Magee's residence, the affiant stated that nothing provided enough evidence to dismantle the organization.[84]

---

[78] Rec. Doc. 259-1 at 50; Rec. Doc. 259-2 at 75.

[79] Rec. Doc. 259-1 at 53–55; Rec. Doc. 259-2 at 78–80.

[80] Rec. Doc. 259-1 at 53–55; Rec. Doc. 259-2 at 78–80.

[81] Rec. Doc. 259-1 at 58; Rec. Doc. 259-2 at 83.

[82] Rec. Doc. 259-1 at 51–52; Rec. Doc. 259-2 at 75–76.

[83] Rec. Doc. 259-1 at 51–52; Rec. Doc. 259-2 at 75–76.

[84] Rec. Doc. 259-1 at 51–52; Rec. Doc. 259-2 at 75–76.

Based on the foregoing, the affiant clearly established the necessity of the wiretaps for Magee's phones. Magee suggests that the traditional means of investigation were successful because investigators had already successfully employed controlled purchases and physical surveillance. This argument is unavailing. As the Fifth Circuit observed in a drug conspiracy case, the fact that informants provided some useful information does not negate a finding of necessity where the evidence "gathered was insufficient to warrant the arrest of several conspirators, particularly the more highly placed ones."[85] The government met its burden of providing a full and complete statement from which it was reasonable to conclude that normal investigative procedures had been tried and failed, and that further normal investigation was unlikely to succeed.

## B.  *Search Warrants for Magee's Residence and Vehicle*

Magee also argues there was not probable cause to issue a search warrant for his residence and vehicle because the law enforcement officers failed to establish a sufficient nexus to the alleged criminal activity.[86] The government contends that the warrants for both Magee's residence and vehicle provide detailed facts to establish a direct nexus between Magee's residence and vehicle to establish a fair probability that evidence of drug trafficking would be found in both.[87]

"Probable cause exists when under the 'totality of the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[88] Probable

---

[85] *Hyde*, 574 F.2d at 868.

[86] Rec. Doc. 249-1 at 4.

[87] Rec. Doc. 259 at 7.

[88] *United States v. Newman*, 472 F.3d 233, 237 (5th Cir. 2006) (alteration in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

cause is "something more than mere suspicion. Probable cause requires the existence of facts sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed and the person to be arrested (or searched) committed it."[89] The warrant "must establish a nexus between the house to be searched and the evidence sought—either by direct observation or through normal inferences as to where the articles sought would be located."[90]

David Biondolillo, a Task Force Officer of the DEA submitted the affidavits in support of the search warrants for Magee's residence and his vehicle.[91] As detailed in both affidavits, law enforcement began their investigation by making controlled purchases of narcotics from White, Johnson, and Short.[92] Agents obtained the Court's authorization to intercept Johnson's phone calls.[93] Through intercepted calls, law enforcement identify Magee as one of Johnson's source of supply as the calls captured Johnson asking Magee for quantities of narcotics.[94] The affidavits also detail subsequent intercepted calls between Johnson and White, which resulted in agents visually identifying Magee and his vehicle.[95]

The affidavits then detailed that after identifying Magee as a source of supply, law

---

[89] *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004) (quoting *United States v. Gordon*, 580 F.2d 827, 832–33 (5th Cir. 1978)) (internal quotation marks omitted).

[90] *United States v Wilson*, 153 F.4th 478, 485 (5th Cir. 2025) (quoting *United States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003)) (internal quotation marks omitted).

[91] Rec. Doc. 259-3; Rec. Doc. 259-4.

[92] Rec. Doc. 259-3 at 6–7; Rec. Doc. 259-4 at 6–7.

[93] Rec. Doc. 259-3 at 7–8; Rec. Doc. 259-4 at 8.

[94] Rec. Doc. 259-3 at 8–20; Rec. Doc. 259-4 at 8–20.

[95] Rec. Doc. 259-3 at 20–25; Rec. Doc. 259-4 at 20–25.

enforcement obtained authorization to intercept Magee's calls.[96] When agents began intercepting Magee's calls they intercepted several conversations between Magee and customers requesting narcotics from Magee. On April 27, 2023, Magee called a customer and arranged the sale of narcotics and agreed to meet the customer in ten minutes.[97] Agents conducting surveillance at Magee's residence observed Magee leave the residence approximately six minutes after the completion of the phone call and drive in his vehicle to the location in Metairie to complete the transaction.[98] In a subsequent call, on May 21, 2023, agents intercepted a call from a customer who called Magee to purchase narcotics on the following day.[99] On May 22, 2023, the customer called Magee two more times to confirm the transaction.[100] Magee eventually left his residence, as confirmed by surveillance, and drove in his vehicle to Covington to complete the transaction.[101]

The affiant provided all the above information in the affidavits for both Magee's residence and his vehicle. On several occasions, Magee was observed leaving his residence in his vehicle to conduct drug transactions almost immediately after negotiating said transactions via telephone. The warrants for both Magee's residence and vehicle provide detailed facts to establish a direct nexus between Magee's residence and vehicle and evidence of drug trafficking. Probable cause existed because "under the 'totality of the circumstances . . . there [was] a fair probability that

---

[96] Rec. Doc. 259-3 at 25; Rec. Doc. 259-4 at 26.

[97] Rec. Doc. 259-3 at 25–26; Rec. Doc. 259-4 at 26–27.

[98] Rec. Doc. 259-3 at 26–27; Rec. Doc. 259-4 at 27.

[99] Rec. Doc. 259-3 at 28–29; Rec. Doc. 259-4 at 28–30.

[100] Rec. Doc. 259-3 at 29–31; Rec. Doc. 259-4 at 31–33.

[101] Rec. Doc. 259-3 at 31–32; Rec. Doc. 259-4 at 32.

16

contraband or evidence" of drug trafficking activity would be found at Magee's residence and in his vehicle.[102]

## V. Conclusion

For the reasons discussed above, the Court denies the motion. The wiretap affidavits for both of Magee's phone numbers established necessity by providing a full and complete statement from which it was reasonable to conclude that normal investigative procedures had been tried and failed, and that further normal investigation was unlikely to succeed. Additionally, the warrants for both Magee's residence and vehicle provide detailed facts to establish a direct nexus between Magee's residence and vehicle to establish a fair probability that evidence of drug trafficking would be found in both locations. Accordingly,

**IT IS HEREBY ORDERED** that Defendant James Magee's Motion to Suppress Evidence[103] is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this  16th  day of June, 2026.



**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[102] *Newman*, 472 F.3d at 237 (quoting *Gates*, 462 U.S. at 238).

[103] Rec. Doc. 249.